# IN RE MILLETT.

PATENTS; ANTICIPATION.

1. An application for a patent is properly rejected upon a reference to a patent granted three days before the application was filed, where the patent, although not describing or claiming the invention, has annexed to it a drawing showing the invention; the failure of the patentee to include the device among the claims of his own invention, implying either that he abandoned it to the public, or that he regarded it as well known to the art. The patent is evidence of the state of the art at the time the drawings and specifications upon which it was afterwards granted, were made, and it is the state of the art and not the patent which constitutes anticipation.

2. Where an applicant for a patent claims a steam-gage having a tapering end so that it may be secured in place without soldering, and a reference to a patent shows a similar gage, but contains no statement that solder is not used, the patent is an anticipation, there being no reason for assuming that the patentee intended to use solder in the absence of a necessity so to do.

No. 172. Patent Appeals. Submitted March 15, 1901. Decided May 21, 1901.

HEARING on an appeal by an applicant for a patent from a decision of the Commissioner of Patents, rejecting his application.       *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. William H. Singleton* for the appellants.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents wherein he refuses to issue letters patent to the appellants, Joshua H. Millett and Samuel G. Reed.

The alleged invention is stated in seven several issues, not substantially different from each other, and which it is not necessary to consider separately. They are the following:

"1. In a steam-gage, the Bourdon tube and the part to which it is secured, the joint between the two being unsoldered and held solely by frictional contact, as explained.

"2. In a steam-gage, the Bourdon tube and the part to which it is secured, the joint between the two being unsoldered and held by frictional contact, as explained.

"3. In a steam-gage, the Bourdon tube and the part to which it is secured, the joint between the two being unsoldered and held by a frictional binding screw-joint connection, as explained.

"4. In a steam-gage, the Bourdon tube and the part to which it is secured, the joint between the two being unsoldered and tapering, as explained.

"5. In a steam-gage, the Bourdon tube, D, having the threaded tapered end, $d$, in combination with the head, C, having the correspondingly-threaded tapered opening, $c^2$, as explained.

"6. A Bourdon tube, having a reduced elastic portion and enlarged or reinforced threaded ends, in combination with a gage-case having threaded portions which engage the threaded ends of the tube.

"7. The Bourdon tube, D, having the reduced elastic body portion, $d$, and the enlarged or reinforced end portions, in combination with the gage-case having correspondingly-threaded portions."

As stated by the appellants in their application, the alleged "invention relates to an improvement in Bourdon-tube springs employed in steam or pressure gages, more especially to the means of connecting the ends of these tubes within a gage."

It seems to consist substantially in dispensing with the soldering of tin, lead, or other fusible material previously used for the connection with the joints, causing the joint to taper, and screwing it more tightly.

The application was filed on February 17, 1900. It was rejected by the primary examiner in an elaborate opinion on reference to a patent issued to one Frederick Lane on February 20, 1900, three days after the filing of the application of the appellants, but which patent had been applied for by Lane upwards of two years before. It was contended by the appellants that their application should not be rejected by reference to a patent issued after the filing of their application, in which their alleged invention, if shown at all, was not claimed, and only appeared in the drawing annexed to the patent; and further that this drawing did not show the invention of the appellants. This contention the primary examiner did not sustain; and his ruling was affirmed on appeal both by the board of examiners-in-chief and the Commissioner of Patents. And from the decision of the Commissioner the case has been brought to this court by appeal.

With reference to the first branch of the contention of the appellants, we are satisfied that the tribunals of the Patent Office were entirely right in the conclusion reached by them. If the drawings annexed to the Lane patent fully and satisfactorily show the device claimed by the appellants, and if these drawings were the same that were filed with Lane's application in the first instance — and we must assume that they were the same until the contrary is made to appear — it is very plain that they show anticipation of the invention of the appellants. It is of no consequence that Lane does not include this device among the claims of his own invention. His failure so to do simply implies either that he abandoned it to the public, or that he regarded it as already well known to the art. It does not help the appellants in any manner that he does not claim it.

It is not the fact that a patent was issued to Lane upon his application which constitutes anticipation in this case. Although that patent was issued in so short a time after the application of the appellants that, in view of the usual and necessary course of business in the Patent Office, we might fairly assume that the facts which justified its issue had

been satisfactorily shown long before the advent of the appellants to the Office, yet the patent of itself would not be sufficient to show anticipation by Lane of the device of the appellants. But the fact which shows such anticipation is the state of the art at the time as evidenced by the drawings and specifications of Lane's application. For it is the condition of the art at the time at which an alleged invention is made, and not the existence of a patent, which in this connection is no more than evidence of the state of the art, which determines whether an invention claimed is actually an invention or not under the patent law. And this state of the art may be shown by a printed book, a periodical publication, a newspaper, anything in fact which can be regarded in law as reasonably sufficient proof of the fact. This we understand to be the rule deduced from reason and the authorities. See *Wright* v. *Yuengling,* 155 U. S. 47; 69 O. G. 639.

This proposition is not seriously, if at all, controverted by the appellants. Indeed, they seem to admit its correctness. Their argument is, that, while a drawing alone, if sufficiently plain and clear, may be sufficient to show an anticipation of the invention, yet the drawing in Lane's patent is not sufficient for that purpose. And this proposition, in view of the previous admission, necessarily means that the Lane drawing is not sufficiently plain and clear to show the invention in question. It is further conceded, however — at all events, it is not denied — that the joints of the Lane drawing have the tapering form which constitutes an element in the invention of the appellants; and so, in the ultimate analysis, the question of anticipation is narrowed down to the inquiry whether in the device shown by the Lane drawing the connection of the joints was effected by soldering or without soldering. The contention of the appellants is that, inasmuch as soldering had been generally used to connect the joints of the devices in previous use, therefore it is to be presumed or assumed that the Lane device also had soldering, notwithstanding that soldering was entirely unnecessary to it. But the specifications of the

Lane patent are wholly silent as to soldering; and inasmuch as such soldering was wholly unnecessary to its successful operation, it is not apparent to us why we should assume that to exist which had no reason to exist. If there was in fact a soldering in the device mentioned or shown in the Lane patent, and such soldering rendered that device essentially different from the invention of the appellants, it ought not to have been difficult to adduce some evidence of the fact. Whether, if shown, the fact of soldering would have differentiated the two devices, it is unnecessary for us to determine. The Commissioner of Patents was of the opinion that it would not have that effect.

The Commissioner of Patents has also remarked that the appellants have not availed themselves of the opportunity afforded to them by the rules of the Patent Office to show priority of invention in themselves by filing an affidavit to carry back their date of invention beyond the date of the filing of the Lane application. From their failure so to do it is just to assume that their invention did not antedate the date of the Lane application.

We see no reason to doubt the correctness of the conclusion reached by the tribunals of the Patent Office; and we are of opinion that the decision of the Commissioner of Patents should be *affirmed*.

*The clerk of the court will certify this opinion, and the proceedings in the cause in this court to the Commissioner of Patents according to law. And it is so ordered.*